UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES E. MITCHELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-00108-LJM-VSS |
| | ) | |
| CITY OF MUNCIE, | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion of the defendant, the City of Muncie (the "City"), for summary judgement on the claim brought against it by the plaintiff, James E. Mitchell ("Mitchell"). Mitchell charges the City with violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for failing to promote him to the position of Chief Arson Investigator ("CAI") for the Muncie Fire Department. Because Mitchell cannot demonstrate a genuine issue of material fact for trial, the City's motion is **GRANTED**.

## I. BACKGROUND

James Mitchell, a black man, has been employed with the City of Muncie Fire Department since January, 1976. Deposition of James Mitchell ("Mitchell Dep.") at 19. Beginning as a firefighter, Mitchell's duties primarily were fire suppression. Affidavit of Gary L. Lucas ("Lucas Aff.") ¶ 33. In 1986, Mitchell was promoted to Sergeant. *Id.* In the position of Sergeant, Mitchell's duties included driving the fire truck, securing the pump, and maintaining the area from the truck to the front door. *Id.* ¶ 34.

In August, 2002, Mitchell learned that the CAI, Raiford M. Terry, intended to resign.

Mitchell Dep. at 59-60.  Terry resigned as CAI in September, 2002.  Mitchell and three others expressed interest in the CAI position.  Lucas Aff. ¶ 21.  The other firefighters who expressed interest in the job were Gary Bowden and David Miller, white men, and Dan Ivy, a black man.  *Id.* Mitchell submitted to Chief Gary L. Lucas a letter of interest in the CAI position on August 15, 2002, before Terry had resigned.  Mitchell Dep. at 59-60.  Ivy submitted a letter of interest in September, 2002.  Lucas Aff. ¶ 29.  Sometime prior to December, 2002, Miller submitted a letter of interest in the CAI position.  *Id.*  Neither Rich nor Bowden submitted letters of interest.  Affidavit of James E. Mitchell ("Mitchell Aff.") ¶ 15.

On October 24 and 25, 2002, Mitchell, Bowden, Ivy, Miller and Captain Bob Rich attended the "Greater Cincinnati Regional Arson & Fire Investigators Seminar," which provided each of them with 16 hours of training in arson investigation.  Lucas Aff. ¶ 22-23.  On November 25-27, 2002, Mitchell, Bowden, Ivy and Miller attended a seminar in Indianapolis on "Electrical Fire Investigations," which provided each of them with 24 hours of training.  *Id.* ¶¶ 24-25.

On February 5 and 6, 2003, Chief Lucas interviewed each of the three candidates for the CAI position.  *Id.* ¶ 31.  Prior to that time, Bowden removed his name from consideration.  *Id.* ¶ 28.  Each remaining candidate was asked the same questions during his interview.  *Id.* ¶ 32.  At the conclusion of each interview, each candidate was given a copy of the job description for the CAI.  *Id.* ¶ 10.  The job descriptions for the Fire Department are also public record and are available upon request from the Fire Chief.  *Id.* ¶ 7.  The minimum qualifications for the CAI job were:

    a.    Any combination of training and experience equivalent to graduation from high school and successful completion of fire recruit school;

    b.    A thorough knowledge of the rules and regulations of the fire department;

    c.    A working knowledge of civil and criminal laws as they pertain to the crime of arson;

    d.     A minimum of one hundred (100) hours of formal instruction on the techniques and procedures of fire investigation;

    e.     A thorough knowledge of the basic principles of photography;

    f.     A working knowledge of various types of construction and building materials and their burning characteristics;

    g.     An ability to prepare and conduct training sessions;

    h.     A residential telephone;

    I.     Five (5) years continuous experience in supervision and fire suppression and a working knowledge of fire investigation procedures.

*Id.* ¶ 8 and Ex. 1.

Miller, who was the Lieutenant Inspector, had experience in the CAI position, covering the position when Terry was on leave or vacation. Affidavit of David L. Miller ("Miller Aff.") ¶ 12; Lucas Aff. ¶ 50. Miller has been with the Fire Department since 1985. *Id.* ¶ 2. Chief Lucas stated in his affidavit that as Lt. Inspector, Miller had "developed and demonstrated a thorough knowledge of the various types of construction and building materials and their burning characteristics." *Id.* ¶ 55. In addition to the training hours each candidate earned in late 2002, Miller told Chief Lucas during his interview that he had completed 40 hours of training on civil and criminal laws, and interviewing and interrogation techniques at his previous job as a security officer at J.C. Penney. Miller Aff. ¶ 30 and Ex. 2; Lucas Aff. ¶¶ 52-53. Also during Miller's interview, Chief Lucas told Miller that his personnel file showed training in the October and November, 2002, courses as well as 16 hours in "Fire and Arson Scene Search and Evidence Recovery" and 16 hours in "Instructor I." Miller Aff. ¶ 29.

Mitchell did not have any experience as an acting CAI. Lucas Aff. ¶ 44. Mitchell claims to have more than 100 hours of training in fire investigation. Mitchell did apprenticeship work with the CAI in 1985 or 1986, earning 20 hours of arson training credit. Mitchell Aff. ¶ 2. Mitchell has also presented a certificate of over 130 hours in fire training, but it is not clear how many of these

hours qualify as "formal instruction on the techniques and procedures of fire investigation." *Id.* ¶ 14 and Ex. 1.  In his interview, Mitchell did not inform Chief Lucas of any training in arson and fire investigation other than the two courses he attended in late 2002.  Lucas Aff. ¶ 42.

On February 6, 2003, Chief Lucas recommended to the Muncie Fire and Police Merit Commission that Miller be promoted to CAI.  *Id.* ¶ 68.  Chief Lucas had determined that Miller was the best qualified of the candidates.  *Id.* ¶ 69.  Miller was appointed CAI.  *Id.* ¶ 71.

Muncie Police and Fire Merit Commission Rule and Procedure No. 8 states that "All promotions to the ranks of Sergeant, Line Lieutenant, Line Captain, Lieutenant Inspector, Chief Inspector, and Battalion Chief shall come from respective promotion eligibility lists.  All other promotions shall be made by the Chief of the Fire Department with the concurrence of the Commission." *Id.* ¶ 6 and Ex. 3.  The CAI position, not listed specifically in Rule and Procedure No. 8, is one of the promotions to be made by the Chief in his discretion.  *Id.*

Mitchell claims that Chief Lucas asked Miller to apply for the CAI job because the only other applicants were black.  He theorizes that "Chief Lucas sought, encouraged, and ensured David Miller that he would appoint him because if the two (2) black candidates were left, he would be required to appoint one of them."  Response ¶ 12.  Mitchell's theory is based on Ivy's testimony that Miller told Ivy, sometime in November, 2002, "Chief Lucas has already told me that he is going to appoint me to the Chief Arson Investigator position.  I don't know why he's dragging feet (sic)."  Affidavit of Danny Ivy ("Ivy Aff.") ¶ 4.  The Court cannot consider that evidence because it is hearsay within hearsay.  Affidavits offered in opposition to a motion for summary judgment must be made on personal knowledge and set forth facts that would be admissible into evidence.  Fed. R. Civ P. 56(e).

## II. __STANDARD__

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *See id.*

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Wollin v. Gondert*, 192 F.3d 616, 620 (7th Cir. 1999); *Schroeder v. Barth, Inc.*, 969 F.2d 421, 423 (7th Cir. 1992). This burden does not entail producing evidence to negate claims on which the opposing party has the burden of proof. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *See Wollin*, 192 F.3d at 621.

When considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party. *Id.* at 621; *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998); *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). If a reasonable fact finder could find for the opposing party, then summary judgment is inappropriate. *Stop-N-Go of Madison, Inc. v. Uno-Ven Co.*, 184 F.3d 672, 677 (7th Cir. 1999); *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Thomas & Betts Corp.*, 138 F.3d at 291; *Shields Enters., Inc.*, 975 F.2d at 1294.

5

## III.  DISCUSSION

A Title VII plaintiff can satisfy his burden of proof by two avenues: (1) he may present direct evidence of discriminatory intent or (2) he may use the indirect, burden-shifting procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031-32 (7th Cir. 1998).  Because Mitchell can offer no direct evidence of discrimination, he must rely on the indirect burden-shifting analysis of *McDonnell Douglas*.

Under this framework in the failure-to-promote context, Mitchell must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected class, (2) he applied for and was qualified for the position, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the Fire Department continued to seek applicants from persons of Mitchell's qualifications, or the position was filled with a person not in the protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174  (7th Cir. 2002).  If the plaintiff makes out a prima facie case of discrimination, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802.  Should the employer meet its burden of showing a nondiscriminatory reason for the plaintiff's rejection, the burden shifts back to the plaintiff to show the employer's explanation is simply a pretext for discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 804.

### A.  MITCHELL'S PRIMA FACIE CASE

There can be no dispute that Mitchell is a member of a protected class, and that he applied for, but did not receive, the CAI position.  The primary dispute between the parties is whether

6

Mitchell was qualified to become the CAI.

The Fire Department has a list of qualifications that were required for the CAI position.

Those are:

a.  Any combination of training and experience equivalent to graduation from high school and successful completion of fire recruit school;
b.  A thorough knowledge of the rules and regulations of the fire department;
c.  A working knowledge of civil and criminal laws as they pertain to the crime of arson;
d.  A minimum of one hundred (100) hours of formal instruction on the techniques and procedures of fire investigation;
e.  A thorough knowledge of the basic principles of photography;
f.  A working knowledge of various types of construction and building materials and their burning characteristics;
g.  An ability to prepare and conduct training sessions;
h.  A residential telephone;
I.  Five (5) years continuous experience in supervision and fire suppression and a working knowledge of fire investigation procedures.

Lucas Aff. ¶ 8 and Ex. 1.

The qualification that the City first claims Mitchell is lacking is the 100 hours of formal instruction on the techniques and procedures of fire investigation.  In response, Mitchell argues that Miller also did not have the required 100 hours, and that Chief Lucas counted hours that should not have been counted.  Generally,  Miller's qualifications are not the primary question in the race discrimination analysis.  A comparison of the two candidates is not proper in a plaintiffs' prima facie case; that is, a plaintiff first must show he is qualified, then if the defendant gives a reason it chose one candidate over the plaintiff, it is proper for the Court to compare the candidates to determine whether the defendant's reason might be pretextual.  *Namenwirth v. Board of Regents*, 769 F.2d 1235, 1240  (7th Cir. 1985).

Thus, the first point that Mitchell must prove is that *he* was qualified for the job.  The

7

circumstances of this case require the Court to consider Miller's background at this point, because if Miller truly did not have the required 100 hours of training, but was given the position anyway, 100 hours of training was not really a requirement.  Having the 100 hours of training written down as a requirement does not make it so if the writing was not followed in practice.  Thus, whether Miller met the 100 hours of training requirement is relevant to Mitchell's prima facie case that he was qualified for the CAI position.

The Court does not sit as a "super-personnel department," second guessing an entity's business decisions.  *See Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561  (7th Cir. 2004).  However, the Court must make all inferences in favor of Mitchell.  The only evidence that Miller's 40 hours of training at J.C. Penney qualifies as "formal instruction on the techniques and procedures of fire investigation" is Chief Lucas' word.  Mitchell argues that it was not "formal instruction on the techniques and procedures of fire investigation."  Because the J.C. Penney training was for Miller's position as a department store security guard, a reasonable inference can and should be made in Mitchell's favor that it was not "formal instruction on the techniques and procedures of fire investigation."

If the 100 hours was not a requirement, the Court looks to the other reasons the City claims Mitchell was not qualified.  The City argues Mitchell "lacks a basic understanding of the civil and criminal laws as they pertain to arson investigations and the operation and divisions of the Fire Department."  Motion at 10.  As to an understanding of the civil and criminal laws related to arson, the Court finds a question of fact exists.  Mitchell claims to have a basic understanding that he has obtained from his experience on the job, "just being there looking and listening."  Mitchell Dep. at 95.  The City has not refuted Mitchell's claim and has not shown that Mitchell could not have gained

8

a knowledge of the relevant laws from his time on the job.

The City's argument that Mitchell lacks a thorough knowledge of the Fire Department's organization and operation is based on Mitchell's statement in his deposition that he had not heard of the "Fire Prevention Bureau." *See id.* at 131.  Apparently, the Fire Prevention Bureau is a division of the Fire Department that works with the public to ensure fire code compliance.  Miller Aff. ¶ 5.  However, the City has not put forth any evidence to show that knowledge of the Fire Prevention Bureau is necessary, or even important, to the qualifications to become the CAI.

Mitchell has shown that questions of fact exists as to whether he can make his prima facie case.  Thus, the burden of production shifts to the City to give a nondiscriminatory reason for passing Mitchell over for the promotion.

## B.  THE CITY'S NON-DISCRIMINATORY REASON

Even assuming that Mitchell can prove his prima facie case, the City asserts that the Fire Department had a legitimate, non-discriminatory reason for choosing Miller over Mitchell for the position.  *See McDonnell Douglas Corp.*, 411 U.S. at 804.  The Fire Department claims to have chosen Miller because he was the *best* qualified for the job.  Miller had experience in arson investigations and worked in the same division as the CAI.  Miller also filled in for the CAI, performing his duties, during the CAI's time off.  As such, the City argues, Miller's job duties as Lieutenant Inspector were oriented toward inspections and investigations, and his promotion to CAI was a logical progression. Conversely, Mitchell's job as Sergeant, driving the fire truck, securing the pump, and maintaining the area from the truck to the door, were more oriented toward fire suppression.

Further, Muncie Police and Fire Merit Commission Rule and Procedure No. 8 provides Chief Lucas with the discretion to promote applicants into the CAI position.  Lucas Aff. ¶ 6 and Ex. 3. Chief Lucas relied somewhat on his familiarity with certain subjective qualities of Miller and Mitchell, including Miller's superior knowledge of the job duties, superior attendance record, and higher scores on internal evaluations.  *Id.* ¶¶ 63-66.  Nothing in Title VII prevents a decision-maker from relying on his personal knowledge and other subjective criteria in evaluating a job candidate. *See Millbrook*, 280 F.3d at 1176.

The City's legitimate non-discriminatory reason for hiring Miller over Mitchell erases any inference of discrimination that exists from Mitchell's ability to prove his prima facie case.  *See id.* at 1174.  The burden of production now shifts back to Mitchell to prove that the City's reason was mere pretext, designed to hide discrimination.  *See id.*

## C.  PRETEXT

A plaintiff can demonstrate a material issue of fact as to pretext by showing (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason, or (2) that an employer's proffered reason is not credible.  *See Hudson v. Chicago Transit Auth.*, 375 F.3d 552  (7th Cir. 2004).  Evidence comparing Mitchell to Miller becomes relevant at the point that Mitchell must prove the City's stated reason for passing him up for the promotion was pretextual.  *See Namenwirth v. Board of Regents*, 769 F.2d 1235, 1240  (7th Cir. 1985).  "[I]f others were hired or promoted though by the same reasoning they ought to have been excluded, then the motive is a 'pretext.'" *Id.* (citation omitted). Again, Miller's 40 hours of training at J.C. Penney become relevant, because it would appear that the City forgave Miller's inability to meet the 100

hours of formal training requirement.

However, Mitchell has not presented any evidence to dispute Miller's other superior qualifications.  There is no evidence that the City's legitimate, non-discriminatory reason for hiring Miller over Mitchell – Miller had more training, more experience filling in for the CAI, better attendance and better performance reviews – was false.

The Court detects some hostility between Mitchell and the Fire Department that existed prior to Chief Lucas' appointment of Miller to CAI.  Mitchell was one of two black men who brought suit against the Fire Department in 1979, alleging race discrimination in the Fire Department's hiring practices.  Mitchell Aff. ¶ 9.  That suit ended in a settlement, which provided for Mitchell to be instated as a firefighter with 6 years' seniority.  *Id.* ¶¶ 4, 9 and Ex. A.  The former Fire Chief asked Mitchell to clean up his office and rearrange furniture, which Mitchell claims was never asked of a white firefighter.  *Id.* ¶ 11.  Mitchell also claims to have been harassed by Chief Lucas in relation to a particular retirement benefit.  *Id.* ¶ 22.  Certainly Mitchell makes these allegations in an attempt to demonstrate the Fire Department has a bias against African-Americans.  Unfortunately for Mitchell, this background does not present a question of fact that the City was motivated to hire Miller for any reason other than that Chief Lucas viewed Miller as the best qualified candidate for the job.  For this reason, Mitchell's claim cannot survive summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, the City's motion for summary judgment is **GRANTED**.

IT IS SO ORDERED this 16th day of June, 2005.


LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


DISTRIBUTION:

Kenneth Anthony Collier-Magar
COLLIER-MAGAR & ROBERTS
kenneth@cmrlawfirm.com

John O'Conner Moss Jr.
MOSS & MOSS
jmjr@mossandmosslaw.com

Marc Josef McCarthy Moss
MOSS LAW, LLC
mmoss@mosslawllc.com

Liberty L. Roberts
COLLIER MAGAR & ROBERTS
liberty@cmrlawfirm.com